**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SUSAN MERRITTS, | : | Civil No. 1:17-CV-01881 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is an employment discrimination case brought by a former employee of

the State Correctional Institution in Houtzdale, Pennsylvania ("SCI Houtzdale").

Before the court is Defendants' motion for summary judgment. For the reasons

that follow, the motion is granted in part and denied in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff Susan Merritts began working at SCI Houtzdale on January 26,

2015. (Doc. 40 ¶ 1; Doc. 43 ¶ 1.) During her employment at SCI Houtzdale,

Merritts worked in the food services department. (Doc. 40 ¶ 3; Doc. 43 ¶ 3.)

Some of her male coworkers, including Sean Lantz, Joseph Smychynsky, Dal

Thompson, Yontosh, and Yarger, repeatedly asked her why a woman would want

---

[1] The facts in this section are undisputed and are primarily derived from the Defendants' statement of material facts and the Plaintiff's response to the statement of material facts. (*See* Docs. 40, 43.) Where applicable, facts have also been taken from the complaint and answer, *see* Docs. 1, 6, or from transcripts of depositions.

to work in a prison and why her husband allowed her to work in a prison.  (Doc. 40

¶¶ 11, 13, 17; Doc. 43 ¶¶ 11, 13, 17.)  In addition to these comments, the male

coworkers also made sexual comments around Merritts, including comments about

anal sex and oral sex.  (*See* Merritts Deposition at 81:6–15.)[2]  The comments by

her male coworkers led her to speak with her supervisors about the way she was

treated.  (Doc. 40 ¶¶ 14, 39; Doc. 43 ¶¶ 14, 39.)  One of her supervisors advised

her to try to get along with the male coworkers.  (Doc. 40 ¶ 18; Doc. 43 ¶ 18.)

In addition to the comments directed towards Merritts, one of the male

employees of the prison told another female employee, Bloom, to "get me a cup of

coffee while you're up" during a time when the employees were sitting in the

break room.  (Doc. 40 ¶ 20; Doc. 43 ¶ 20.)  Bloom got the cup of coffee, which

prompted a male employee to tell Merritts that she should take a lesson from

Bloom.  (Doc. 40 ¶¶ 20–21; Doc. 43 ¶¶ 20–21.)  Male employees also often

refused to help female employees with clean-up at the end of shifts.  (Doc. 1 ¶ 15;

Doc. 40 ¶ 38.)

Based on the treatment Merritts received from her male coworkers, she

approached her supervisor, Don Sharp, about filing a sexual harassment complaint.

(Doc. 40 ¶ 46; Doc. 43 ¶ 46.)  Multiple male coworkers overheard this

---

[2] The Merritts deposition is docketed at Doc. 46-15.

conversation.  (*Id.*)  After Merrritts filed her complaint with the prison, another female employee approached Merritts and told her that the male coworkers might lose their jobs as a result of Merritts's complaint.  (Doc. 40 ¶ 29; Doc. 43 ¶ 29.)

During her employment at SCI Houtzdale, Merritts was twice reprimanded for improper radio use.  (Doc. 40 ¶¶ 41–44; Doc. 43 ¶¶ 41–44.)  In one such instance, she was reprimanded for making generalized requests for help over the radio instead of directing her communications to individual people.  (Doc. 40 ¶ 41; Doc. 43 ¶ 41.)  Merritts was additionally reprimanded on one occasion for leaving her work area unsupervised and on another occasion for failing to follow food preparation procedures.  (Doc. 40 ¶¶ 47, 51–52; Doc. 43 ¶¶ 47, 51–52.)  Merritts was unaware whether other employees were reprimanded for the same or equivalent conduct as the conduct that led to her reprimands.  (Doc. 40 ¶ 54; Doc. 43 ¶ 54.)

Merritts was placed on a performance improvement plan in July 2015. (Doc. 1 ¶ 26; Doc. 6 ¶ 26.)  She was then suspended without pay based on accusations from male employees that she had violated prison policy by sharing personal information with inmates and using the middle finger hand gesture.  (Doc. 1 ¶ 27; Doc. 6 ¶ 27.)  The accusation that Merritts had shared personal information was based on a conversation she had had with an inmate in which she stated that she had gone boating one weekend on Raystown Lake.  (Doc. 40 ¶ 33; Doc. 43 ¶

3

33.)  Merritts remained on unpaid suspension until her employment at SCI

Houtzdale was terminated on October 20, 2015.  (Doc. 1 ¶ 10; Doc. 6 ¶ 10.)

Following her termination, Merritts filed suit in this district on October 16,

2017, naming as defendants the Commonwealth of Pennsylvania and the

Pennsylvania Department of Corrections ("DOC"), and raising causes of action for

sex discrimination, hostile work environment, and retaliation under both Title VII

of the Civil Rights of 1964 and the Pennsylvania Human Relations Act ("PHRA").

(Doc. 1.)  Defendants answered the complaint on December 8, 2017.  (Doc. 6.)

Following the conclusion of discovery, Defendants moved for summary judgment

on October 16, 2019, and filed a statement of material facts in conjunction with the

motion on the same day.  (Docs. 38, 40.)  Merritts responded to the statement of

material facts on October 30, 2019.  (Doc. 43.)  Defendants filed a brief in support

of the motion on November 15, 2019, Merritts filed an opposition brief on

December 5, 2019, and Defendants filed a reply brief on December 27, 2019.

(Docs. 44–45, 52.)  With briefing on the motion having concluded, the motion is

now ripe for the court's disposition.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district

court to exercise subject matter jurisdiction in civil cases arising under the

Constitution, laws, or treaties of the United States, and 28 U.S.C. § 1367, which

4

gives district courts supplemental jurisdiction over state law claims that are so closely related to federal claims as to be part of the same case or controversy.

### STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case.'" *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

Merritts's claims are brought under Title VII and the PHRA. Because claims under the two statutes are governed by "essentially the same legal standards," the court will analyze them together. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 n.8 (3d Cir. 2016) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000)). The court will first analyze Merritts's sex discrimination claim before moving on to her hostile work environment and retaliation claims.

### A. Defendants Are Not Entitled to Summary Judgment as to Merritts's Sex Discrimination Claim

Defendants argue there is insufficient evidence for the sex discrimination claim to proceed to trial and that they had a legitimate nondiscriminatory reason for their treatment of Merritts. (*See* Doc. 44 at 10–13.) Merritts disputes this argument, arguing that there is sufficient evidence for her discrimination claim to go to trial. (Doc. 45 at 8–11.)

Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e-2(a)(1).  Here, because Merritts's claim is based on circumstantial evidence of discrimination, it is governed by the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The *McDonnell Douglas* framework contains three steps.  At the first step, the plaintiff must establish a prima facie case of discrimination.  *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).  If the plaintiff meets that burden, the burden of production shifts to the defendants to offer a legitimate nondiscriminatory reason for the adverse treatment of the plaintiff.  *Id.*  The burden then shifts back to the plaintiff to show that the proffered nondiscriminatory reason was a pretext for discrimination.  *Id.* at 427.

To establish a prima facie case of sex discrimination at the first step of the *McDonnell Douglas* framework, a plaintiff must show (1) that she is a member of a protected class, (2) that she was qualified for the position she had, (3) that she suffered an adverse employment action, and (4) that "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).  At the summary judgment stage, the plaintiff's burden is to show that there is sufficient evidence "to convince a reasonable factfinder to find all of the elements of the prima facie case."  *Burton*,

707 F.3d at 426 (quoting *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001)).

Here, the court finds that Merritts has met her burden to establish a prima facie case of sex discrimination.  It is undisputed that Merritts is a member of a protected class and that she was qualified for the position that she had.  It is also clear that she suffered adverse employment actions when she was suspended without pay and subsequently terminated.  Finally, there is sufficient evidence for a finder of fact to conclude that the adverse employment actions "occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel*, 706 F.3d at 169.  For example, Merritts's coworkers questioned why a woman would want to work in a prison and asked her why her husband allowed her to work in a prison.  (Doc. 40 ¶¶ 11, 13, 17; Doc. 43 ¶¶ 11, 13, 17.)  Her supervisors were made aware of these comments, and, rather than taking action against the male employees, one of her supervisors advised her to try to get along with the male employees.  (Doc. 40 ¶¶ 14, 18, 39; Doc. 43 ¶¶ 14, 18, 39.)  Viewing the facts in the light most favorable to Merritts as the non-movant, the court finds that such inaction and seeming acquiescence by the supervisors regarding the comments by her male coworkers could support an inference of intentional discrimination.  *See, e.g.*, *Andrews v. City of Phila.*, 895 F.2d 1469, 1479 (3d Cir. 1990) (finding that supervisor's "boys will be boys" response to female

employee's complaints of sexual harassment supported an inference of discrimination), *superseded by statute in nonrelevant part*, 42 U.S.C. § 1981; *accord McLaughlin v. Rose Tree Media Sch. Dist.*, 52 F. Supp. 2d 484, 491 (E.D. Pa. 1999); *Hurley v. Atlantic City Police Dep't*, 933 F. Supp. 396, 401 (D.N.J. 1996).

Because Merritts has established a prima facie case of sex discrimination, the burden shifts to Defendants to offer a legitimate nondiscriminatory reason for the adverse employment actions. *Burton*, 707 F.3d at 426. "This burden is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Id.* (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)).

In this case, Defendants have met their burden of showing a legitimate nondiscriminatory reason for the adverse actions against Merritts because they have offered evidence that Merritts was reprimanded on multiple occasions for using her radio improperly, leaving her work area unsupervised, and failing to follow food preparation procedures. (*See* Doc. 40 ¶¶ 41–44, 47, 51–52; Doc. 43 ¶¶ 41–44, 47, 51–52.) There is also evidence in the record from which a reasonable finder of fact could conclude that Merritts's suspension and subsequent termination

were due to her violating prison policies by sharing personal information with inmates and using the middle finger hand gesture.  (Doc. 1 ¶ 27; Doc. 6 ¶ 27.)

Accordingly, the burden shifts back to Merritts to show that the proffered nondiscriminatory reason was a pretext for sex discrimination.  *Burton*, 707 F.3d at 427.  To meet her burden at this stage, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Merritts has met her burden at the third stage of the *McDonnell Douglas* framework.  Although her suspension and termination were ostensibly based on her sharing personal information with inmates and using the middle finger gesture, there is evidence in the record from which a reasonable finder of fact could conclude that male coworkers engaged in similar conduct without getting suspended or fired.  (*See* Merritts Deposition at 43:21–24 (testimony that male coworkers talked to inmates about attending football games), 81:6–15 (testimony that male coworkers often made comments about anal sex and oral sex).  Accordingly, because there is sufficient evidence in the record for a reasonable finder of fact to find that Defendants discriminated against Merritts on the basis of

sex, the court will deny Defendants' motion for summary judgment as to that claim.

## B. Defendants Are Entitled to Summary Judgment as to Merritts's Hostile Work Environment Claim

The court will next address Merritts's claim that she was subjected to hostile work environment harassment in violation of Title VII and the PHRA. Defendants argue they are entitled to summary judgment as to this claim because there is insufficient evidence for Merritts to prove the claim. (Doc. 44 at 15–18.) Defendants additionally advance a *Faragher-Ellerth* defense,[3] arguing that they are entitled to summary judgment because they took reasonable steps to prevent harassment. (*Id.* at 19–22.) Merritts argues that her hostile work environment claim should survive summary judgment and that there are genuine issues of material fact regarding Defendants' *Faragher-Ellerth* defense. (Doc. 45 at 12–13.)

To establish a hostile work environment claim, a plaintiff must establish that "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability."

---

[3] The *Faragher-Ellerth* defense is available when an employer takes reasonable steps to prevent and correct harassment and depends on whether the plaintiff avails herself of available preventive and corrective remedies. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

*Minarsky v. Susquehanna Cty.*, 895 F.3d 303, 310 (3d Cir. 2018) (quoting *Mandel*,

706 F.3d at 167).

For harassment to be sufficiently severe to support a hostile work

environment claim, "it must alter the conditions of the employee's employment

and create an abusive working environment." *Moody v. Atl. City Bd. of Educ.*, 870

F.3d 206, 214 (3d Cir. 2017) (internal alterations omitted) (quoting *Meritor*

*Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986)).  To determine whether this is the

case, a court must analyze the circumstances surrounding the alleged harassment,

"including the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." *Id.* at 215

(quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001)).  Mere

offensive comments are generally insufficient to establish a hostile work

environment claim.  *See, e.g.*, *Greer v. Mondelez Global, Inc.*, 590 F. App'x 170,

173 (3d Cir. 2014) ("'Mere offensive utterances' are insufficient to create a hostile

environment, even if they engender offensive feelings in an employee." (quoting

*Faragher*, 524, U.S. at 786)); *cf. Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174,

181 (3d Cir. 2020) (concluding under New Jersey Law Against Discrimination that

"[u]tterances that are merely offensive do not rise to the level of unreasonably

interfering with an employee's job performance," and noting that NJLAD is subject to the same standards of liability as Title VII).

In this case, Merritts's hostile work environment claim is based solely on offensive comments made by her male coworkers. Specifically, Merritts's male coworkers repeatedly asked her why a woman would want to work in a prison and why her husband allowed her to work in a prison. (Doc. 40 ¶¶ 11, 13, 17; Doc. 43 ¶¶ 11, 13, 17.) Merritts also testified that the male coworkers made frequent comments about anal sex and oral sex. (Merritts Deposition at 81:6–15.) Those comments, although clearly offensive and inappropriate in the workplace, do not rise to the level of severity necessary to support a hostile work environment claim. *See Ali*, 957 F.3d at 181; *Greer*, 590 F. App'x at 173; *see also, e.g., Grassmyer v. Shred-It USA, Inc.*, 392 F. App'x 18, 25, 30 (3d Cir. 2010) (holding that comments were not sufficiently severe to support hostile work environment claim where male supervisor regularly made sexually explicit and offensive comments in the workplace). Accordingly, the court will grant Defendants' motion for summary judgment with regard to Merritts's hostile work environment claim.

## C. Defendants Are Not Entitled to Summary Judgment as to Merritts's Retaliation Claim

Finally, the court will analyze whether Defendants are entitled to summary judgment as to Merritts's retaliation claim. Defendants argue they are entitled to summary judgment as to the retaliation claim because there is insufficient evidence

to support such a claim, because they had legitimate nonretaliatory reasons for their treatment of Merritts, and because the decision to terminate Merritts would have been made regardless of whether any retaliation occurred.  (Doc. 44 at 24–30.)  Merritts argues the claim should go forward because she has produced sufficient evidence to support an inference of retaliation.  (Doc. 45 at 14.)

To establish a prima facie case of retaliation, a plaintiff must show (1) that she engaged in protected employee activity; (2) that the employer took an adverse action against the employee either after or contemporaneous with the employee's protected activity; and (3) that there was a causal connection between the employee's protected activity and the employer's adverse action.  *Moody*, 870 F.3d at 220 (internal alterations omitted) (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)).  In determining whether there is a causal connection between the plaintiff's protected activity and the retaliatory action, a court considers a "broad array of evidence."  *Daniels*, 776 F.3d at 196 (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)).  A causal connection can be established by an "unusually suggestive" temporal proximity between the protected activity and the retaliatory action.  *Id.* (quoting *LeBoon*, 503 F.3d at 232).  The "circumstances as a whole" can also establish a causal connection, including "any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any

15

other evidence suggesting that the employer had a retaliatory animus when taking
the adverse action." *Id.* (quoting *LeBoon*, 503 F.3d at 232–33.)

In a case such as this one where there is no direct evidence of retaliation, a
court analyzes a plaintiff's claim under the *McDonnell Douglas* burden-shifting
framework. *Id.* at 193. Thus, once a plaintiff establishes a prima facie case of
retaliation, the burden of production shifts to the employer to offer a legitimate
nonretaliatory reason for the adverse action against the plaintiff. *Id.* "If the
employer advances such a reason, the burden shifts back to the plaintiff to
demonstrate that 'the employer's proffered explanation was false, and that
retaliation was the real reason for the adverse employment action.'" *Id.* (quoting
*Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

Here, Merritts has established a prima facie case of retaliation. Merritts
engaged in protected conduct by complaining about her coworkers' comments to
her supervisor. "[P]rotected 'opposition' activity includes not only an employee's
filing of formal charges of discrimination against an employer but also 'informal
protests of discriminatory employment practices, including making complaints to
management.'" *Id.* (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del.,
Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). She has also shown an adverse action
through her suspension and subsequent termination. *See Abramson v. William
Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001) (holding that termination

16

constituted adverse employment action).  Finally, there is sufficient evidence in the record for a reasonable finder of fact to find a causal connection between her protected conduct and her subsequent termination.  Specifically, there is evidence from which a finder of fact could conclude that at least one male employee overheard Merritts's sexual harassment complaint, that other employees were aware that Merritts had made a complaint, and that male employees accused her of violating prison policy after she had made the complaint despite other employees frequently engaging in similar conduct.  (*See* Doc. 40 ¶¶ 27, 29, 33, 46; Doc. 43 ¶¶ 27, 29, 33, 46; Merritts Deposition at 43:21–24, 81:6–15.)

The burden accordingly shifts to Defendants to offer a legitimate nonretaliatory reason for the adverse employment action taken against Merritts. *Daniels*, 776 F.3d at 193.  Defendants have met that burden here.  As noted above, there is evidence in the record from which a finder of fact could conclude that Merritt's termination was due to her improper use of her radio, leaving her work area unsupervised, failing to follow food preparation procedures, sharing personal information with inmates, and using the middle finger hand gesture while at work. (*See* Doc. 40 ¶¶ 27, 41–44, 47, 51–52; Doc. 43 ¶¶ 27, 41–44, 47, 51–52.)

At the third step of the *McDonnell Douglas* framework, Merritts must produce evidence from which a reasonable finder of fact could conclude that retaliation was the real reason for the adverse employment action. *Daniels*, 776

F.3d at 193.  She has met that burden because, as noted above, a reasonable finder of fact could conclude that the allegations that she had violated prison policy were made in retaliation for her sexual harassment complaints and that other employees were not disciplined for conduct that was similar to the conduct that led to her termination.  (*See* Doc. 40 ¶¶ 27, 29, 33, 46; Doc. 43 ¶¶ 27, 29, 33, 46; Merritts Deposition at 43:21–24, 81:6–15.)  Accordingly, the court will deny Defendants' motion for summary judgment with regard to Merritts's retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: June 12, 2020